(No. 27935.—

ISA MACINTYRE WRIGHT, Appellee, *vs.* FRANK J. HENDRICKS *et al.,* Appellants.

*Opinion filed Nov. 22, 1944—Rehearing denied Jan. 11, 1945.*

D. T. SMILEY, of Woodstock, for appellants.

BAYLEY, WEBSTER, GREGORY & HUNTER, of Chicago, and DON WICKS, of Woodstock, (ROBERT L. HUNTER, of Chicago, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellee filed a complaint in the circuit court of McHenry county seeking to enjoin defendants, appellants, from obstructing an easement for a driveway existing partly on the property of appellants and partly on the property of appellee. It appears from the record that appellee and appellants own adjoining lots in the city of Woodstock, known as lots No. 2 and No. 3. In the deed of conveyance to appellee, a certain provision regarding a driveway was made. The original grantor of appellee's lot, known as lot No. 2, also owned lot No. 3, and in making this deed reserved a strip of land four feet wide off the west side of lot No. 2 and conveyed the easement in a strip four feet wide off the east side of lot No. 3, the purpose being to use the eight-foot strip as a private driveway for the use of the owners and occupants of those two lots. This driveway has existed for nearly forty years and was used and traveled by the parties for driveway purposes. The charge of the complaint is that, notwithstanding this conveyance and use, the appellants planted a hedge so that it cut off a portion of the eight-foot strip,

and also placed stones within that strip, in violation of appellee's easement, thus preventing the use of the full eight feet of the driveway.

The defense is that an agreement was made after the execution of the deed to appellee's grantor, one Perry W. Murphy, by which agreement Murphy erected a retaining wall, which is now in place and which fixed the east side of the driveway along the retaining wall; that during the lifetime of Murphy the property was used in accordance with the agreed lines. In support of this contention they also allege that the sidewalk, when it was constructed at the north end of the driveway, was marked and lined in accordance with such agreement; that this agreement was entered into more than thirty years prior to the bringing of this suit. It is also said that a sewage pipe line from the main sewer in the street north of the lots was, by agreement, placed on the line that is now the center line of the driveway, as appellants contend it should be, and that appellee's predecessor in title at all times until his death said that the sewer line was laid in the center line of the driveway, and that the driveway, as used for more than twenty-five years, was a seven-foot and not an eight-foot driveway.

The record shows the ownership of lots No. 2 and No. 3 subject to an easement of four feet off each lot for a private driveway. The plat made by the county surveyor shows the division line between the lots to be four feet and four inches west of the cement curb placed on lot No. 2, and that the hedge on the west side of the driveway complained of is about six or seven inches east of the west line of the easement as reserved in the deed. The record shows this hedge is about two feet in height and spreads out at the top to a width of eighteen or twenty inches, so that the top of the hedge extends some twenty-five to twenty-eight inches east of the west line of the driveway. There is no question but that the hedge and

the stones as placed interfere with the use of the entire eight feet.

Appellants rely on an agreement fixing the boundaries of the driveway of a width of seven feet instead of eight feet. The only testimony supporting such an agreement is that of Frank J. Hendricks, who testified to a conversation with Perry Murphy, the then owner of lot No. 2, in 1915, in which Murphy suggested the bringing in of the sewer from the sewer line in the middle of the street "on our line." The record also shows that the sewer was brought to within a foot of the north line of the sidewalk but the man who did the work testified he did not locate the sewer with reference to the lot line between lots No. 2 and No. 3. Hendricks also testified that a post was put at the back of the lot on a spot in line with the center of the seven-foot driveway. The record shows encroachments as we have indicated.

It is contended that by agreement of the parties it was determined that the center line of the driveway was the center of the seven feet now used. We have examined the evidence and without detailing it in full are convinced that there was no parol agreement establishing a line in accordance with the rule in this State pertaining to that matter. The rule is that whenever the boundary line between adjoining lands is unascertained or in dispute, it may be established by parol agreement and possession in pursuance thereof, and the line so established will be binding on the parties and their privies. The effect of such an agreement is not to pass title by parol, for such cannot be done, but to fix the location of an unascertained or disputed boundary line. If the location of the true boundary line is known or has been ascertained, land cannot be transferred from one to another by an oral agreement changing the location of such line. There are but two conditions under which the rule in relation to establishment of boundary lines by agreement applies, one is, where the line is in dispute, and the other, where it has not been

ascertained. In either case the agreement is for the purpose of establishing a disputed or unascertained line. So the rule does not apply if the intention of the parties is merely to determine the exact or true line. (*Jones* v. *Scott*, 314 Ill. 118; *Marks* v. *Madsen*, 261 Ill. 51; *Sonnemann* v. *Mertz*, 221 Ill. 362; *Yates* v. *Shaw*, 24 Ill. 368.) This record does not present a case of disputed or unascertained line. The agreement referred to appears to have been an attempt on the part of the parties to provide a driveway in accordance with the identical true lines as made by the survey. Such does not amount to establishing disputed or unascertained lines by parol agreement.

Where, as here, the line between the two lots has been ascertained by the original survey, and conveyances are made by metes and bounds, conveying, as in this case, strips four feet wide along the boundary line, a parol agreement that the strips shall be of a different width is not effective to pass title or change the original grant. An easement created by express grant can be extinguished only by hostile, adverse possession for the statutory period. *Perry* v. *Wiley*, 285 Ill. 25; *Illinois Central Railroad Co.* v. *Moore*, 160 Ill. 9; *Kuecken* v. *Voltz*, 110 Ill. 264.

It is argued, also, by appellants that the record established more than twenty years' adverse possession and that the bar of the Statute of Limitations is to be invoked against the record title. It is a sufficient answer to this contention to say that the bar of the Statute of Limitations was not pleaded. Limitation statutes must be pleaded to be availed of. (*Wall* v. *Chesapeake and Ohio Railroad Co.* 200 Ill. 66; *Gunton* v. *Hughes*, 181 Ill. 132.) The defense was on the ground of an oral agreement and user thereunder. Such does not amount to pleading adverse possession for the period of limitation fixed by the statute. The chancellor did not err in granting the relief prayed, and the decree will be affirmed.

*Decree affirmed.*